# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> vs. <br> MARCO CONTRERAS, <br><br> Defendant. | CASE NO. 08cr3414 BTM <br><br> **ORDER DENYING MOTION TO DISMISS INDICTMENT DUE TO INVALID DEPORTATION** |

Defendant Marco Contreras is charged with violating 8 U.S.C. § 1326. Defendant moves to dismiss the indictment on the basis that his underlying deportation in September, 2008 was invalid. For the reasons explained below, the Court **DENIES** Defendant's Motion.

## I. BACKGROUND

Defendant was born in Mexico on July 2, 1985. He is a Mexican citizen. At the age of three, Defendant entered the United States illegally and moved to the Las Vegas, NV area with his family. Defendant attended U.S. schools during his childhood. Defendant is now married to a U. S. citizen with two U.S. citizen children. Defendant's mother is a lawful permanent resident.

Defendant's step-father, also a U.S. citizen, filed an I-130 Immigration Petition for Relative, Fiance(e), or Orphan on his behalf on or about March 20, 2003. Defendant became eligible for a visa when the petition was approved on or about May 19, 2004. Defendant's priority date was March 19, 2003.

On November 29, 2006, Defendant was convicted of felony robbery in violation of

Nevada Revised Statute § 200.380 ("N.R.S. 200.380"). He was sentenced to two years in custody of the Nevada Department of Corrections.

On August 27, 2008, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Defendant with having illegally entered the U.S. and committed a crime of moral turpitude. DHS agents apprehended Defendant that day and placed him in deportation proceedings. Defendant then signed a "Stipulated Request for Removal and Waiver of Hearing." Defendant alleges he was told that if he signed the form, he would be quickly returned to Mexico. He also claims that he did not read the entire form and did not understand its contents. By signing the form, Defendant admitted the facts included in the Notice to Appear and waived his right to a hearing in front of an Immigration Judge ("IJ").

On September 2, 2008, an IJ reviewed Defendant's sworn statement and the Notice to Appear and signed a written order of removal. The IJ's order did not indicate whether Defendant's waiver was knowing, voluntary, and intelligent.

On September 14, 2008, Defendant was arrested when he applied for entry at the Otay Mesa Port of Entry. Defendant was subsequently indicted for one count of attempted entry after deportation in violation of 8 U.S.C. § 1326, and one count of false claim of U.S. citizenship in violation of 18 U.S.C. § 911.

On January 16, 2009, Defendant filed a Motion to Dismiss Count One of the Indictment.

## II. DISCUSSION

Defendant moves here to dismiss the first count of the indictment, arguing that his underlying deportation was invalid. Specifically, Defendant alleges that his due process rights were violated when the IJ failed to make a separate determination that Defendant's waiver of a hearing was voluntary, knowing, and intelligent. Defendant further argues that he suffered prejudice because the IJ failed to inform him of plausible grounds of relief. For the reasons explained below, the Court agrees that defects in Defendant's deportation proceedings violated his right to due process. Nevertheless, Defendant fails to sustain his

collateral attack because he cannot demonstrate prejudice.

A. Standard

To sustain a collateral attack under 8 U.S.C. § 1326(d) ("Section 1326(d)"), a defendant must show that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) entry of the order was fundamentally unfair. "An underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004) (quoting United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998), *cert. denied*, 252 U.S. 849 (1998)). Defendant bears the burden of showing he was prejudiced. United States v. Leon-Leon, 35 F.3d 1428, 1431 (9th Cir. 1994 (citation omitted); United States v. Gonzalez-Valerio, 342 F.3d 1051, 1056 (9th Cir. 2003).

The Government does not challenge Defendant's assertions that he has met the first two prongs required to sustain a collateral attack under Section 1326(d). The Court therefore directs its analysis to whether Defendant has sufficiently demonstrated that entry of the IJ's order was fundamentally unfair.

B. Due Process Violation

Defendant first claims that his due process rights were violated because the stipulated deportation order did not comply with the requirement that an IJ make a specific finding that Defendant's waiver of a hearing was "voluntary, knowing, and intelligent" as required by 8 C.F.R. § 1003.25(b) ("Section 1003.25(b)").

Section 1003.25(b) regulates stipulated requests for removal and allows an IJ to enter an order of removal without a hearing and in the absence of the parties. This regulation also provides, however, that "[i]f the alien is unrepresented, the Immigration Judge must determine that the alien's waiver is voluntary, knowing and intelligent."

Here, Defendant was not represented by counsel when he signed the stipulated request for removal order. The IJ's order clearly does not include a specific determination that Defendant waived his right to a hearing. (See Def.'s Ex. C.) Furthermore, the Government does not dispute Defendant's contention that his due process rights were violated by the IJ's defect. Other courts have found a defendant's due process rights violated where the IJ failed to make a separate determination that an unrepresented alien voluntarily, knowingly, and intelligently waived his right to hearing. See United States v. Vasallo-Martinez, 2008 WL 5450353, at *2 (S.D. Cal. Dec. 30, 2008) (finding a due process violation where the IJ did not make a specific inquiry into whether defendant's waiver of a hearing was voluntary and intelligent, and where there was no record beyond the stipulation itself upon which the IJ could make that determination); see also United States v. Gomez-Hernandez, 2008 WL 2096876, at *4 (E.D. Wash. May 16, 2008) (defendant's due process rights violated where he signed a stipulated form and IJ never specifically inquired into whether his waiver of counsel was knowing, intelligent, and voluntary).

Thus, the Court finds that defects in Defendant's underlying deportation proceedings violated his right to due process.

C. Prejudice

Defendant argues that because his stipulated deportation was invalid as a matter of law, he need not show prejudice. To support this argument, Defendant relies solely on the transcript of proceedings in another case from this district, United States v. Nicolas Cesareo, 08-CR-201-W (S.D. Cal. 2008). In that case, Judge Whelan similarly identified a due process violation arising out of the IJ's failure to make a specific determination that the defendant voluntarily, knowingly, and intelligently waived his right to a hearing. (Def.'s Ex. E at 5:7–16.) Contrary to Defendant's assertions, however, it appears that Judge Whelan then made a separate finding of prejudice. The Court agrees with the Government that Judge Whelan found defendant Cesareo prejudiced as a result of the due process violation because he had plausible grounds for relief since his lack of prior felony convictions made him eligible for

voluntary departure. (See Def. Ex. E. 5:16–21.) Defendant cites no additional support for his contention that he is not required to show prejudice. The Court therefore finds that Defendant must demonstrate prejudice resulting from the IJ's due process violation.

In order to establish prejudice, Defendant must show that he had a "plausible" ground for relief from deportation. United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). Defendant claims two plausible grounds for relief were available to him, a Section 212(h) waiver of inadmissibility and adjustment of status, or voluntary departure.

### 1. Section 212(h) Waiver

First, Defendant claims that he was eligible for adjustment of status and a Section 212(h) waiver of inadmissibility. An alien who would otherwise be inadmissible must qualify for both adjustment of status and a 212(h) waiver in order to obtain relief from removal. The Attorney General may, in his discretion, adjust the status of an alien who was inspected and admitted or paroled into the United States to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment; (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and (3) an immigrant visa is immediately available to him at the time his application was filed. 8 U.S.C. § 1255(a).

Defendant contends that he was prejudiced because the IJ did not inform him of his eligibility for adjustment of status and Section 212(h) relief. Had the IJ informed Defendant of his eligibility for adjustment of status and Section 212(h) relief, Defendant argues that he could have filed an application for adjustment of status simultaneously with his application for waiver of inadmissibility under Section 212(h). The Court agrees that Defendant could have applied for adjustment of status and Section 212(h) relief at the same time during his deportation proceedings. See Matter of Parodi, 17 I. & N. Dec. 608, 611–612 (BIA 1980) (Section 212(h) waiver may be obtained in deportation proceedings if it is granted in conjunction with adjustment of status); Matter of Balao, 20 I. & N. Dec. 440, 446 (BIA 1992)

(same).¹ The Government argues that a visa was not immediately available to Defendant because his wife had not yet filed a visa petition at the time of the IJ's hearing. But, had the IJ informed Defendant of his potential eligibility for adjustment of status, Defendant could have asked for a continuance while his wife filed a visa petition and he subsequently applied for adjustment of status. An IJ may grant a motion for a continuance "for good cause shown." 8 C.F.R. § 1003.29. Moreover, as the wife of an United States citizen, an immigrant visa also would have been immediately available to Defendant upon her petition. See 8 U.S.C. § 1151(b)(2)(A)(I). Nonetheless, Defendant could not have adjusted his status because he did not have a plausible ground for Section 212(h) relief.

A waiver of inadmissibility may be granted under Section 212(h) where "(1) the alien is the spouse, parent, or child of a citizen or lawful permanent resident; (2) the exclusion would result in extreme hardship to the citizen or lawfully resident relative; (3) the alien's admission would not be contrary to the national welfare, safety, or security of the United States; and (4) the Attorney General exercises her discretion in the alien's favor." United States v. Arce-Hernandez, 163 F.3d 559, 563 (9th Cir. 1999).

The Government argues that Defendant did not have a plausible basis for 212(h) relief because the conviction underlying his deportation was an aggravated felony. The Government contends that the Attorney General may not exercise his discretion in favor of an alien who has been convicted of an aggravated felony, thus preventing Defendant from satisfying the fourth prong required to secure a Section 212(h) waiver. The Government erroneously relies on 8 U.S.C. § 1228 ("Section 1228") to support its contention that Section 212(h) relief was not available to him. Section 1228, however, only applies to aliens processed through expedited removal processes. See United States v. Arrieta, 224 F.3d 1076, 1080–1081 (9th Cir. 2001). While the Government alleges that Defendant was subject

---

¹ The Government also contends that because Defendant was not inspected and admitted and no alien relative petition was filed on his behalf prior to April 30, 2001, he could not meet the requirements of 8 U.S.C. § 1255(i) and thus could not have applied for adjustment of status. The Court finds below that Defendant could not prove extreme hardship under Section 212(h) in any case. Therefore, Court does not reach the issue of whether an unlawfully present alien with an immediately available visa, resulting from a petition filed after April 30, 2001, may apply for adjustment of status.

to an expedited removal process, the Notice to Appear indicates that removal proceedings were initiated pursuant to 8 U.S.C. § 1229a, not Section 1228.  (See Def. Ex. A.)  Thus, Section 1228 does not apply to bar a Section 212(h) waiver for Defendant .

The limitation regarding aggravated felons within Section 212(h) is equally inapplicable to Defendant.  Section 212(h) itself prohibits relief only to aliens convicted of an aggravated felony who have been previously admitted as lawful permanent residents.  In Re Michel, 21 I. & N. Dec. 1101, 1104 (BIA 1998); Taniguchi v. Schulz, 303 F.3d 950, 956–958 (9th Cir. 2002).  Defendant was never admitted as a lawful permanent resident, so the Section 212(h) limitation does not apply to him.

A Section 212(h) waiver will be granted, however, only where there is "great actual or prospective injury" or "extreme impact" on the citizen family member, beyond the "common results of deportation."  Arce-Hernandez, 163 F.3d at 564 (quoting Shooshtary v. INS, 39 F.3d 1049, 1051 (9th Cir. 1994) (internal quotations omitted)).  Defendant argues that his deportation would have an extreme impact on his family, including his U.S. citizen wife, two children, and stepfather, and his permanent resident mother, principally because it would disrupt family unity.  Defendant relies heavily on the Ninth Circuit's reasoning in Arietta to claim that he could plausibly show extreme hardship.

"'Preservation of family unity' may be a central factor in an extreme hardship determination."  Arietta, 224 F.3d at 1082 (quotations omitted).  In Arietta, however, the defendant documented several ways his deportation would deprive his family of non-economic familial support and interrupt family unity.  Id. at 1082.  Arietta submitted an affidavit by his mother, who was in very poor health, describing how he assisted her in raising his younger citizen siblings, and the difficulty she encountered once he was deported.  Id.  Here, Defendant did not submit *any* evidence to show how his deportation will disrupt family unity.  Although he is married to a U.S. citizen and has two U.S. citizen children, he has been incarcerated for much of the past two years (during which time he became married), raising questions about the nature and extent of his relationships with his wife and children.  Unlike the defendant in Arietta, Defendant provides no evidence of any hardship his family faced during his absence, and offers no reasons why his family cannot relocate together to Mexico.

Defendant's conclusory allegations that his deportation will result in a disruption of family unity are insufficient to show extreme hardship. See United States v. Muro-Inclan, 249 F.3d 1180, 1185 (9th Cir. 2001) (finding no plausible claim for Section 212(h) relief where defendant only submitted a brief, nonspecific declaration from his wife stating that she needed his help to raise their children, and the conclusory opinion of an immigration lawyer). The Court finds this to be a "typical case of hardship that follows deportation of an alien whose citizen wife and children were all acquired after his illegal entry into the United States." Arce-Hernandez, 163 F.3d at 564.  Thus, Defendant has not shown that he had a plausible claim for Section 212(h) relief at the time of his deportation.

2. Voluntary Departure

Second, Defendant contends that he was prejudiced because the IJ never informed him that he was eligible for voluntary departure.  An alien who is deportable for having committed an aggravated felony does not qualify for voluntary departure.  8 U.S.C. § 1229c(b)(1)(C).  Defendant argues that he had a plausible ground for voluntary departure because his conviction for robbery under Nevada statute N.R.S. § 200.380 did not constitute an aggravated felony.

To decide whether Defendant's conviction qualifies as an aggravated felony under 8 U.S.C. 1101(a)(43), the Court must employ the two-step test set forth in Taylor v. United States, 495 U.S. 575 (1990) and Shepard v. United States, 544 U.S. 13 (2007). See Kawashima v. Mukasey, 530 F.3d 1111, 1114 (9th Cir. 2008).  The Court first compares the elements of the statute under which Defendant was convicted to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43). Id. "Under this categorical approach, an offense qualifies as an aggravated felony if and only if the full range of conduct covered by the [statute of conviction] falls within the meaning of that term." Id. (quoting Ferreira v. Ashcroft, 390 F.3d 1091, 1095 (9th Cir. 2004)).

Here, the relevant aggravated felony is "a crime of violence . . . for which the term of imprisonment is at least one year." 8 U.S.C. 1101(a)(43(F).  A "crime of violence" is further defined as "(a) an offense that has as an element the use, attempted use, or threatened use

of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 8 U.S.C. § 16.

Defendant claims that the N.R.S. § 200.380 is overly broad and includes conduct outside the scope of the generic definition of a "crime of violence." N.R.S. § 200.380 prohibits as robbery:

> [T]he unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:
>
> (a) Obtain or retain possession of the property;
> (b) Prevent or overcome resistance to the taking; or
> (c) Facilitate escape.
>
> The degree of force used is immaterial if it is used to compel acquiescence to the taking of or escaping with the property. A taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

Defendant argues that because Nevada's robbery statute penalizes threats of future harm, threats to property, threats of harm to a family member, and conduct beyond the knowledge of the victim, it exceeds the generic definition of a crime of violence. The Court disagrees.

In <u>United States v. McDougherty</u>, the Ninth Circuit held that conviction for robbery under California's statute was a "crime of violence" as defined by 18 U.S.C. § 16. 920 F.2d 569, 573–574 (9th Cir. 1990). California's robbery statute prohibits "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. Section 212 of the California Penal Code further defines "fear" as either "1. [t]he fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or 2. [t]he fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of robbery." <u>McDougherty</u> held that "[r]obbery as defined in California is a crime committed directly against and in the presence

of the victim through 'force or fear,' and thus is certainly the kind of crime that presents a serious risk that physical force may be used," as prohibited by 18 U.S.C. § 16.  920 F.2d at 574.

Likewise, Nevada's robbery statute clearly proscribes a "crime of violence" within 18 U.S.C. § 16.[2]  As with the California statute, the threatened use of force against property in N.R.S. § 200.380 satisfies the definition for a "crime of violence" in 18 U.S.C. § 16.  <u>Id.</u>  Similarly, the use or threatened use of force may be directed toward an individual other than the victim of the robbery (namely, a family member not present or a person at the location of the crime) to meet the definition of a crime of violence.  <u>Id.</u>  The Nevada statute's proscription of threats of *future* harm in the course of an unlawful taking also do not render it broader than the generic definition of a crime of violence.  The California statute defines "fear" to include "unlawful injury to . . . any relative of [the person robbed] or member of his family."  This definition necessarily encompasses some conduct threatening future harm, since the victim's family member surely may not be present at the time of the robbery.  Nevertheless, courts have repeatedly found California's statute easily a "crime of violence" within 18 U.S.C. § 16. <u>Id.</u>;<u>see also</u> <u>Thap v. Mukasey</u>, 544 F.3d 674, 677 (6th Cir. 2008) (finding Cal. Penal Code § 211 a crime of violence for aggravated felony purposes under Section1101(a)(43)(F) "even though physical force is not an element of the crime"); <u>see also</u> <u>United States v. Valladares</u>, 304 F.3d 1300, 1303 (8th Cir. 2002) (holding that Section 211 constitutes a crime of violence under 18 U.S.C. § 16 since "robbery achieved through force or fear by its nature presents 'a substantial risk that physical force against the person or property of another may be used'").  The Court therefore finds that the threat of *future* force included within Nev. Rev. Stat. § 200.380 qualifies as the "use, attempted use, or threatened use of physical force against the person or property of another" within 18 U.S.C. § 16.

Defendant's argument that the statute's proscription of the use, attempted use, or

---

[2] In an unpublished case, the Ninth Circuit assumed, without reaching the issue, that N.R.S. § 200.380 qualified as a "crime of violence" under 18 U.S.C. § 16, justifying removal under 8 U.S.C. § 1101(a)(43)(F).  <u>See</u> <u>Martinez v. Mukasey</u>, 267 Fed.  Appx. 519 (9th Cir. 2008) (holding that defendant convicted of robbery under N.R.S. § 200.380, who did not challenge his removal on the ground that he was convicted of a crime of violence, remained removable for having been convicted of an aggravated felony).

threatened use of force to facilitate escape causes it to fall outside the generic definition of a crime of violence also fails to persuade the Court. The use, attempted use, or threatened use of force to effectuate escape following an unlawful taking certainly "involves a substantial risk that physical force against the person or property" will be used during the course of committing the offense. See 18 U.S.C. § 16(b). The Court also finds it insignificant whether the person robbed lacks knowledge that the unlawful taking took place. Again, the use of force or fear to deprive the victim of knowledge of the taking thereby involves the substantial risk that physical force will be used during the commission of the crime, coming within 18 U.S.C. § 16(b). See United States v. Lewis, 405 F.3d 511, 514 (7th Cir. 2005) (holding that Indiana robbery statute, penalizing unlawful taking from another person "by putting any person in fear," constituted a crime of violence under 18 U.S.C. § 16 because "[e]ven if the offender uses a threat rather than actual force, the victim may retaliate or flee, and violence erupt; this risk makes robbery a crime of violence under subsection (2) [of 18 U.S.C. § 16]").

The Court thus finds that N.R.S. § 200.380 qualifies as a crime of violence within 18 U.S.C. § 16 and that Defendant's conviction constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43(F). As a result, Defendant was not plausibly eligible for voluntary departure and suffered no prejudice from the IJ's failure to inform him of this form of relief from deportation. Because Defendant cannot show that he had any plausible grounds for relief from deportation, he also cannot demonstrate the requisite prejudice to sustain his collateral attack. Thus, Defendant's deportation may be relied upon in a Section 1326 prosecution.

### III. CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss the Indictment Due to Invalid Deportation is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 17, 2009

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge